■ In the Matter of GENERAL MOTORS CORPORATION CENTRAL FOUNDRY DIVISION, Appellant, v ASSESSOR OF THE TOWN OF MASSENA et al., Respondents. (And Three Other Related Proceedings.)—Casey, J. Appeal from an order and judgment of the Supreme Court (Duskas, J.), entered January 15, 1988 in St. Lawrence County, which dismissed petitioner's applications, in four proceedings pursuant to RPTL article 7, to review assessments of petitioner's property for the tax years 1982, 1983, 1984 and 1985.

In these proceedings to review real property tax assessments for certain tax years, the subject property is a 223.86-acre parcel improved with an extensive industrial facility, constructed in 1959 and thereafter regularly expanded and modernized, which petitioner uses for aluminum casting production. Following a trial at which petitioner and respondents presented appraisal reports and the testimony of experts who prepared those reports, Supreme Court confirmed the assessments and dismissed the petitions, resulting in this appeal by petitioner. "Despite the difficulties of computing the market value of large industrial complexes, the market value method of valuation is preferred as the most reliable measure of a property's full value for assessment purposes * * * and where, as here, evidence of a recent sale price is lacking, market value may be determined with reference to recent sales of comparable properties" (Matter of General Elec. Co. v Town of Salina, 69 NY2d 730, 731). The parties each submitted appraisal reports containing a market data analysis and a second approach to valuation. Supreme Court properly focused mainly on the market data approach in its decision.

Petitioner contends that Supreme Court erroneously adopted the concept of "value in use", a value based upon the use to which the owner adapts the property. The argument is meritless since it misperceives Supreme Court's reasoning. Contrary to petitioner's claim, the court did not base its valuation of the subject property on the economic benefit to petitioner flowing from its use of the property as an aluminum casting facility. Rather, the court considered petitioner's use of the property for heavy industrial purposes as a means of determining whether the comparable sales selected by petitioner's experts in his market data analysis were, in fact, comparable to the subject property.

Supreme Court found that the subject property is suitable for a multitude of industrial and commercial uses, but that "25% of the subject's main plant is particularly suited for heavy industrial manufacturing which, together with the

auxiliary site improvements, made the subject property unique". In using the word "unique", the court did not find that the subject property was a "speciality" *(see, Matter of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236, 240), but that the property's heavy industrial capacity was an added feature to be considered in determining the property's value. Upon examining the 20 comparable sales of improved property used by petitioner's expert, Supreme Court discovered that no less than 18 of those comparable sales involved facilities devoted to warehousing and light industry or light manufacturing. Petitioner's expert conceded that the subject property was suitable for heavy industry and that almost any type of industrial manufacturing or fabricating operation could be conducted there. Nevertheless, the expert chose comparable sales involving properties that were suitable for warehousing and light industry, and he made no specific adjustment for the subject property's heavy-duty capacity. It appears that petitioner's expert chose the comparables on the theory that prospective purchasers of the subject property might use the property for a purpose which would not require any of its heavy industrial features, such as the 30-ton craneway, reinforced flooring, large electrical supply and waste treatment facility. Since value is to be determined on the basis of the condition of the subject property according to its state on the taxable status date, not on the basis of some use contemplated in the future *(Matter of Adirondack Mountain Reserve v Board of Assessors,* 99 AD2d 600, *affd* 64 NY2d 727; *Matter of Addis Co. v Srogi,* 79 AD2d 856, *lv denied* 53 NY2d 603), we find no error in Supreme Court's conclusion that the market data analysis of petitioner's expert was seriously flawed by the failure to take into account the heavy industrial capacity of the subject property in the selection and analysis of comparable sales.

Supreme Court also noted that during the period 1980 through 1983, petitioner made real property improvements to the premises in the amount of $19.7 million, while the value of the entire property as determined by petitioner's expert using the market data approach ranged from $5.75 million to $6.6 million for the tax years 1982 through 1985. When questioned at trial about this discrepancy, petitioner's expert testified that he found the improvements to be insignificant in determining the value of the property, explaining that while petitioner's expenditure of $19.7 million may have been a proper investment in terms of the productivity of petitioner's aluminum casting facility, it was "a terrible mistake" from a

real estate point of view since it added nothing to the value of the property. The trial court rejected this opinion and concluded that the valuation by petitioner's expert was further flawed by his treatment of these recent substantial capital expenditures as insignificant. We see no basis for disturbing Supreme Court's finding in this regard.

The bulk of petitioner's appellate brief is devoted to arguments that the appraisal submitted by respondents is so tainted with errors that it should have been rejected by Supreme Court. Petitioner also contends that the court erred in confirming the assessments for the tax years 1984 and 1985 since those assessments were greater than the value determined by respondents' expert in his market data analysis. "[I]t is well settled that there is a presumption of validity of an assessment by the taxing authority and the burden is imposed on petitioner to show by substantial evidence that the assessments are excessive" *(Matter of Adirondack Mountain Reserve v Board of Assessors,* 99 AD2d 600, 601, *supra).* When the taxpayer meets this burden and presents sufficient evidence to make out a prima facie case that the assessment is erroneous, the presumption of validity disappears and may not be considered in weighing the evidence *(Matter of Broadway-Saranac Lake Corp. v Board of Assessors,* 43 AD2d 649). But when the taxpayer's proof is inadequate, the presumption remains in effect *(Matter of Adirondack Mountain Reserve v Board of Assessors, supra; Matter of Manno v Finance Adm'r of City of N. Y.,* 92 AD2d 896), and the trial court is not obligated to arrive at a value for the subject property *(Matter of Xerox Corp. v Ross,* 71 AD2d 84, 89, *lv denied* 49 NY2d 702). In the case at bar, having found that the sales upon which petitioner's expert relied in preparing his appraisal were not comparable to the subject property, Supreme Court properly concluded that the appraisal was unreliable *(see, Matter of Adcor Realty Corp. v Srogi,* 54 AD2d 1096, *lv denied* 41 NY2d 806). This conclusion is further supported by the expert's failure to attach any significance to the substantial capital improvements to the subject property during the period 1980 through 1983. Since petitioner's evidence that the assessments were excessive was properly found to be unreliable, petitioner failed to meet its burden of proof and the presumption of validity remains in effect. Accordingly, there is no need to address the merits of petitioner's challenge to the reliability of respondents' appraisal, and Supreme Court's judgment should be affirmed.

Order and judgment affirmed, with costs. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.